**In the Interest of C.D., B.D., E.D., and A.D., Minor Children,**

**B.D., Mother, Appellant.**

No. 93–567.

Court of Appeals of Iowa.

Nov. 29, 1993.

Christine L. Crilley of Ackley, Kopecky & Kingery, Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Rebecca Belcher, Asst. County Atty., for appellee.

Crystal L. Usher of Wilson, Matias, Usher & Leff, guardian ad litem, for appellee.

Considered by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

Barbara is the mother of four children: Christina, born May 30, 1979; Brian, born June 8, 1981; Elizabeth, born September 23, 1983; and Angela, born September 17, 1986.

The mother appeals the juvenile court's order denying her request to modify the visitation and service provisions of a 1991 permanency order.

In April 1989 the Linn County Juvenile Court adjudicated the four children to be in need of assistance (CINA) and removed them from the custody of their parents. The children were placed in foster care. The adjudication was based on the mother's history of exposing them to sexual abuse perpetrators, including their father who was found guilty of indecent contact with a child, another man who had a criminal record of abusing children, and Charles LaSage who had an extensive criminal history. In December 1984 a CINA petition had been filed on behalf of Christina. In March 1985 she was adjudicated in need of assistance in Jones County Juvenile Court. Her father was found guilty of indecent contact with a child.

In January 1991 a permanency hearing was held. The juvenile court changed the goal of the permanency order from family reunification to long-term foster care. *See* Iowa Code § 232.104(2)(d)(4). The court found the children had been in foster care for approximately twenty months and they could not be returned to their mother's custody. The court noted extensive services had been provided to the mother to assist her in parenting skills and to help her deal with her own behavior patterns which result in her exposing her children to dangerous abusive individuals. The court stated the service providers involved in the case had gone beyond the normal call of duty in trying to make the case plan work. The parents, however, had been unwilling to accomplish the goals of the plan. Termination of parental rights was not considered because of the oldest child's bond with the mother. A limited and supervised visitation schedule was ordered. The mother never appealed this order changing the goal of the case plan.

In March 1991 the State sought a transfer of guardianship of the children from the mother to the children's guardian ad litem and attorney, Crystal Usher. The State claimed the mother had frequently delayed permitting the children to participate in

school activities or trips with the foster family. The State also contended the mother on two occasions had delayed in allowing the children to receive medical care. The juvenile court transferred guardianship to Usher. The transfer was affirmed on appeal. *In re C.D.*, 487 N.W.2d 373 (Iowa App.1992). This court concluded the mother had abused her guardianship authority by frequently delaying and expressing reluctance in permitting the children to participate in school activities or trips with the foster family. This court also cited the two occasions on which the mother delayed in allowing the children to receive medical care.

In February 1993 the mother filed her petition for modification of the permanency order. The father's parental rights have been terminated. *In re C.D.*, 3–288/93–172 (Iowa App. Aug. 6, 1993). The mother stated she had complied with all the requirements of the permanency plan. She requests: (1) make-up visits, (2) longer visitations and an opportunity to discuss certain issues with the children including changing their surnames and the termination of the father's parental rights, (3) payment for a group for nonoffending parents, (4) quasi-unsupervised visitation, (5) weekly phone calls to the children, and (6) counseling between her and the children. The ages of the children at the time of trial were as follows: Christina was thirteen years and nine months old, Brian was eleven years and nine months old, Elizabeth was nine years and five months old, and Angela was six years and five months old.

At the hearing on the modification petition, an Iowa Department of Human Services (DHS) caseworker, Heidi Schrott, testified. She stated the children had done well in foster care, had already completed necessary counseling, and the two oldest children had expressed no desire to participate in counseling with their mother. Ann Coe, a Tanager Place therapist, testified the oldest child, Christina, had contacted her to say she and Brian wanted no changes in visitation or phone calls from their mother to the foster home.

The mother's petition was denied in its entirety. The district court stated the mother continued to act against the best interests of the children and continued to view her relationship with the children in view of her own needs rather than the needs of her children.

The mother appeals. She argues case progress reports and other evidence presented at trial show she has made substantial changes since the 1991 permanency order. She also argues the juvenile court erred in failing to separate the roles of guardian ad litem, the children's guardian, and the children's attorney.

■ Our review of an action arising from CINA proceedings is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by these findings. Iowa R.App.P. 14(f)(7).

I. The mother contends the trial court erred in failing to modify visitation and service provisions of a permanency order.

■ The modification of a dispositional order is provided for in Iowa Code section 232.103 (1991). We have held a party seeking a modification of the custody provisions of a prior dispositional order must show the circumstances have so materially and substantially changed that the best interest of the child requires such a change in custody. *In re J.F.*, 386 N.W.2d 149, 152 (Iowa App. 1986); *In re Leehey*, 317 N.W.2d 513, 516 (Iowa App.1982). We determine this standard also applies to modifications of other provisions of the dispositional order such as visitation and service.

> Before an order in a juvenile proceeding can be modified, petitioner must first prove a *substantial change in material circumstances,* and must then prove that, under the new conditions, a change is in the best interests of the child.

43 C.J.S. *Infants* § 74 (1978) (citations omitted).

■ In a proceeding of this nature the focal point is the best interests of the children. *See In re C.G.*, 444 N.W.2d 518, 520 (Iowa App.1989) (citing *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)). The children's best interests are to be determined by

looking at the children's long-range as well as immediate interests. *Id.* (citation omitted). The parent's past performance provides insight into this determination. *Id.* (citation omitted); *In re D.C.*, 436 N.W.2d 644, 645 (Iowa App.1988) (citation omitted).

The mother's past performance raises much concern. DHS has had an open service case involving this family since October 30, 1983. A dozen other agencies have been involved with the members of this family. Christina was initially adjudicated in need of assistance in 1985. All four children were adjudicated in need of assistance in April 1989. The children were removed from their mother's care due to her failure to protect them from exposure to sexual abuse. The children have remained in foster care since 1989. Within one month of the children's removal in April 1989, the court suspended all visitation, including supervised visitation, between the children and their mother because she continued to have a relationship with Charles LaSage, from whom she had promised to stay away. DHS alleged LaSage was making threats to service providers and urging Barbara to abduct the children. In June 1989 the court reinstated supervised visitations for the mother.

In March 1991, however, the State sought a transfer of guardianship from the mother. The State argued the mother continued to delay granting permission to her children to participate in school activities, trips with the foster family, and most significantly, to receive medical care.

In the review section of the September 1992 case plan, the DHS caseworker, Heidi Schrott, explained the location of the children's foster family had not been revealed because of the threats of kidnapping.

■ The mother seeks modification of the visitation provisions of the case permanency order. A permanency order may provide restrictions upon the contact between the children and the children's parent, consistent with the best interest of the children. Iowa Code § 232.104(4) (1991). In this case the goal of the permanency order is long-term foster care, rather than reunification.

■ Sandy Prior, a protective service case coordinator with Linn County Home Health, testified at the hearing. She supervises the protective caseworker involved in this case. Prior stated even with supervision at all times during the visitations, the mother continues to act inappropriately. Based on the reports and information given by the case worker, Prior opined visitations should not be less supervised. Prior noted the mother, during the visitation just the week before the hearing, had brought up issues which were not to be discussed at visitations. One of the mother's responsibilities pursuant to the case plan is to follow the guidelines set for the visitations. The mother asked one of the children if she would want to change her name to her mother's maiden name and informed the children their father was appealing the termination of his parental rights.

The children's guardian made a professional statement at the hearing. Crystal Usher stated she visited with the children for two and one-half hours on January 16, 1993, concerning the changes requested by their mother. Usher testified all four children said they did not want the number of visits or manner in which they were conducted to be changed at all. The guardian recommended the permanency order not be modified.

Christina reiterated her desire for no changes in visitations when she called Heidi Schrott and Ann Coe just prior to the hearing and made a similar statement. Both individuals testified as to Christina's phone call and statement requesting no changes in visitation. Schrott also testified Christina had said she feels comfortable and does not want more counseling. Christina also told Schrott she does not want her mother to be granted weekly phone calls because she fears her mom would abuse the right and disrupt the foster home.

Tanager Place's quarterly report, dated December 17, 1991, states the children are thriving in the foster home environment. The caseworker recommended the children remain in foster care on a long-term basis.

The mother contends a modification is justified because she has made substantial progress on the case plan. We disagree. A

modification requires we consider the best interests of the children. *In re J.F.*, 386 N.W.2d at 152. The mother only testified at the hearing she was not presently dating anyone. Under the circumstances of this case we cannot determine this constituted a material and substantial change of circumstances. Evidence shows the mother continued to act inappropriately during visitations.

We hold the mother has failed to show a material and substantial change of circumstances which would warrant a change of the visitation provisions. The modifications requested by the mother would not be in the best interests of the children.

The mother also requests the service provisions of the case plan be modified. She seeks more counseling for herself and family. DHS has recommended Barbara complete a nonoffending spouse group therapy before her entire family is subjected to more counseling. The record shows such a program was made available to Barbara from 1989 to 1991. The mother, however, failed to complete the program during the one and one-half year period. The two oldest children have successfully completed their individual therapy sessions. Schrott stated it is recommended the mother complete such a program before she enter any counseling with her children. The goal of this case plan is long-term foster care. In light of the mother's failure to previously complete the program, her failure to show a material and substantial change of circumstances, and the goal of the case plan, we deny her request to modify the service provisions.

The amount of patience for Barbara's actions must be reasonably limited because "patience with parents can soon translate into intolerable hardship for their children." *In re S.V.G.*, 496 N.W.2d 262, 264 (Iowa App.1992) (citation omitted).

There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

*Id.* (citation omitted). The Iowa Supreme Court has stated: "Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be *constant, responsible, and reliable.*" *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) (emphasis added). The court shall consider the children's needs for a secure and permanent placement in light of the permanency plan submitted to the court. Iowa Code § 232.104(1) (1991). In changing the goal to long-term foster care and transferring guardianship from the mother our courts have recognized the permanency and stability needs of the children must come first.

We determine the mother has failed to show circumstances have so materially and substantially changed that the best interests of the children require a change in the visitation and service provisions of the case plan. The best interests of the children and their needs for secure and permanent placement are being served under the permanency order. *See* Iowa Code § 232.104(6) (1991). Granting the modification would not be in the children's best interests at this time. We affirm the decision of the juvenile court on this issue.

II. The mother argues the trial court erred in failing to separate the role of guardian ad litem, attorney, and guardian. Attorney Crystal Usher served in all three fiduciary positions. The mother argues there is a conflict in these roles. We determine there is no conflict of interest in this case; therefore, we do not address this contention further. We affirm on this issue.

We affirm the juvenile court's order denying the mother's application for modification of the permanency order.

**AFFIRMED.**

DONIELSON, J., takes no part.