# IN THE COURT OF APPEALS OF IOWA

No. 14-0315
Filed June 11, 2014

**IN THE INTEREST OF V.B.,**
**Minor Child,**

**B.B., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Deborah Farmer

Minot, District Associate Judge.


        A mother appeals from the juvenile court order modifying the dispositional

order in a child-in-need-of-assistance proceeding.  **AFFIRMED.**


        Jean Lawrence of the University of Iowa College of Law Clinical Law

Program, Iowa City, for appellant mother.

        Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney

General, Janet M. Lyness, County Attorney, and Patricia Weir, Assistant County

Attorney, for appellee State.

        Anthony Haughton, Cedar Rapids, for minor children.


        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

A mother appeals from the juvenile court order modifying the dispositional order to transfer custody of her child, V.B., to the Iowa Department of Human Services (DHS) for placement outside of the home.[1]  She contends the State failed to prove a substantial change in circumstances warranting modification occurred following entry of the dispositional order.  She also contends the transfer of custody was not in the child's best interests.  Considering the mother's disregard of the directives set forth in the dispositional order and the continued and worsened physical and emotional abuse suffered by the child, we conclude a substantial change in circumstances warranting modification of the prior court order has occurred.  We further conclude it is in the child's best interests to be removed from her mother's care.  Accordingly, we affirm the court order modifying the dispositional order to transfer custody of V.B. to DHS for placement outside of the home.

**I. Background Facts and Proceedings.**

DHS became involved with the mother and her four children in October 2011, after one of V.B.'s brothers was hospitalized for psychiatric evaluation and

---

[1]Three of the mother's four children were adjudicated as children in need of assistance on May 30, 2012.  The mother appeals the court's modification order, which only modified the custody and placement of V.B.  The family originally became involved with DHS when one of V.B.'s siblings was hospitalized for psychiatric evaluation and treatment.  The child subject to psychiatric treatment was removed from the mother's care in November 2011 and spent over a year in a psychiatric medical institution for children (PMIC).  At the time of the modification, and after two foster home placements, the child was back in a PMIC facility with a permanency goal of another planned, permanent living arrangement.

The other two children remain in the mother's home.  One of these two siblings was originally also subject to the petition for modification, but the GAL withdrew his recommendation regarding this child after the hearing, so only V.B.'s custody was modified.

treatment. The brother was removed from the mother's care in November 2011.

The State filed child-in-need-of-assistance (CINA) petitions for each of the three remaining children, including V.B., in December 2011.

V.B. was adjudicated a CINA pursuant to Iowa Code 232.2(6)(c)(2) (2011)[2] on May 30, 2012. In the written ruling, the juvenile court stated:

> It is abundantly clear that each of these children is in need of assistance. Parental mental illness and medical conditions, lack of follow through with recommended services, failure to appropriately supervise and discipline the children, resistance to intervention, and inability or unwillingness to recognize and acknowledge these issues has, over a period of many years, created a stressful, chaotic, and unpredictable home which has negatively impacted all the children to various degrees. . . . Without intensive services the children's problems, as well as the conditions that have prevailed in the home for the past several years, will certainly fail to improve and will likely worsen.
> . . . .
> [V.B.] is already suffering ill effects as a result of the home environment. She, like [her siblings], has frequently missed school and is significantly behind. While truancy alone is not a legal basis for adjudication, it is but one symptom of the lack of structure and supervision in this home. . . . [The mother] and [the stepfather] have no system of discipline in their home and they cannot agree on one. They frequently argue about discipline in front of the children, sometimes for hours. [The stepfather] favors [the youngest child] and regularly defends her or blames the other children for her behavior. In his eyes, [the youngest child] can do no wrong. This appears to be a frequent source of disagreement with [the mother], who has a similar attitude toward [V.B.]. This chaos has lasted for years and is steadily worsening.

The juvenile court held a dispositional hearing on July 18, 2012. The resulting order allowed V.B. to remain in the home of her mother and stepfather

---

[2] Iowa Code section 232.2(6)(c)(2) provides:
A "child in need of assistance" means an unmarried child:
(c) Who has suffered or is imminently likely to suffer harmful effects as a result of . . . .
(2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

but set expectations the parents would (1) develop and use a system of behavior management, behavior modification, and discipline for the children; (2) continue to participate in marital therapy; and (3) obtain mental health and parenting evaluations and follow through with any recommendations.

On September 10, 2012, the mother and stepfather became involved in an argument that ultimately resulted in the stepfather pleading guilty to domestic abuse assault causing bodily injury and being placed on probation. During the argument, V.B. tried to intervene and was pushed to the floor by the stepfather. A criminal no contact order was entered but later dropped at the request of the mother.

The juvenile court held another review hearing on March 22, 2013, after receiving the first report of the court appointed special advocate. Shortly before the hearing, there was an incident on a city bus where the stepfather hit V.B. in the arm and called her names, including racial slurs. The DHS worker's report, submitted at the hearing, stated, "While none of the concerns have individually warranted an emergency removal, this worker feels the combination of concerns puts the children at very high risk and this worker is concerned for the long term well being of the children."

The court set a modification hearing for July 2, 2013, to consider whether the children should be removed from the home. By the time the hearing date arrived, all parties were in agreement the prior orders should be continued. The mother had made concerted efforts to follow through with case plan expectations; however, there was no consensus that any significant or lasting progress had been made. In the ruling following the hearing, the juvenile court stated, "The

Court continues to find that the situation at home is tenuous, that minimal progress is being made, and that these children are at high risk for not having their needs met, for physical and emotional abuse, and for denial of critical care." At the recommendation of the mother's psychiatrist, the court ordered her to participate in the Systems Training for Emotional Predictability and Problem Solving (STEPPS) program. The court also considered a recommendation from DHS that a no-contact order should be entered to prohibit the stepfather from contacting V.B., but the GAL expressed concern that such an order would isolate V.B. from her other family members. The court declined to enter the order but stated, "[I]f further reports of physical, verbal, or emotional abuse are received, the Court will reconsider this decision. [The stepfather] is encouraged to pursue a positive relationship with [V.B.] in the best interests of all the children."

On November 4, 2013, the juvenile court held another hearing for in-court review. At the hearing, the GAL submitted a report recommending the prior orders be modified for V.B. "because the GAL fears for her health and safety and her mother's inability to protect her from her husband and siblings." The court's order, filed November 14, 2013, summarizes the findings from the hearing:

> Both the mother and [stepfather] provided information about the incident [that occurred on September 10, 2013]. It is clear that [V.B.] and [her youngest sibling] were arguing and name-calling and, as usual, neither parent was able or willing to properly redirect or discipline the children. When [V.B.] called him names, [the stepfather] felt "disrespected" and slapped her in the mouth. Afterward, he ordered her out of her home. [The mother] accompanied [V.B.] outside, whereupon [the stepfather] locked them out of the home despite the fact that [the mother and V.B.] lives in the home, but [the stepfather] lives elsewhere. Based upon this information, a review of the court files, the documents submitted, the testimony presented, and the statements of the parties, the Court finds that [V.B.] can no longer remain safely in

the family home and that remaining in the home would be contrary to her best interests due to repeated episodes of physical, verbal and emotional abuse, and that her mother is unable and/or unwilling to protect her.

The court then ordered V.B. to be temporarily placed in foster care and scheduled a modification hearing for January 14, 2014.

At the modification hearing, the mother admitted she had not complied with court order to enter the STEPPS program. She also testified that she and the stepfather were separated and going through a divorce. Although the mother claimed the stepfather had not been allowed in the family home since September 10, 2013, when the stepfather slapped V.B. on the mouth and locked her out of the home, but other statements she made belied this testimony. In the written order, the court stated:

> The files, reports, and orders of the Court document a well-established pattern of [V.B.] being a target of resentment, anger, and abuse by [the stepfather]. She appears to be a convenient scapegoat. She is often caught in the crossfire between [the stepfather] and [the mother]. She has repeatedly been the victim of physical, emotional and verbal abuse. [The stepfather's] treatment of [V.B.] has been nothing short of abysmal. His emotional maturity appears to be at the level of a child, not an adult. He lacks the resources to manage his anger and frustration, and he takes it out on [V.B.]. As was evident from his statements in November, he clearly feels completely justified in his actions because he is "disrespected" by [V.B.]. To be sure, [V.B.] is disrespectful, disobedient, and insulting to [the stepfather], but the blame for her behavior can be laid squarely at the feet of the adults. [The mother] cannot or will not protect [V.B.]. While she is not to blame for [the stepfather's] words and actions, she most certainly is responsible for failing to use the tools that are available to her, such as no contact orders. She is also responsible for minimizing [the stepfather's] behaviors and blaming [V.B.] for the abuse, which was very much in evidence during her testimony at the hearing.

The court found V.B. could not remain in the family home and maintained her placement with a foster family. The court also granted custody to DHS so that

V.B.'s medical and medication needs could be met. Finally the court found it was in V.B.'s best interest to enter a no-contact order prohibiting the stepfather from contacting V.B. The mother appeals.

## II. Standard of Review.

We review CINA proceedings de novo. *In re K.B.*, 753 N.W.2d 14, 14 (Iowa 2008).

The juvenile court may modify a dispositional order upon good cause if the court finds any of the following circumstances exist:

(a) The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
(b) The purposes of the order cannot reasonably be accomplished.
(c) The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.
(d) The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

Iowa Code § 232.103(4). If the court finds there is good cause, the court must take a second step in the analysis before it may transfer custody.

A transfer of custody shall not be ordered unless the court finds there is clear and convincing evidence that "(1) the child cannot be protected from physical abuse without transfer of custody; or (2) the child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available." Iowa Code § 232.102(5)(a). Further, the court "must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and identify the reasonable efforts that have been made." Iowa Code § 232.102(5)(b). Finally, in order to modify custody or placement, there must

also be a material and substantial change of circumstances. *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991).[3]

**III. Discussion.**

The mother contends the State failed to prove circumstances have changed since entry of the dispositional order because the issues that existed at the time of modification were the same that led to the CINA adjudication. We disagree.

The mother's refusal or inability to limit the stepfather's contact with the child and the escalation of the stepfather's violent and abusive behavior towards

---

[3] The mother contends the State must show a substantial change of circumstances to modify the dispositional order granting custody of the child to DHS and cites in support of this proposition the case of *In re R.F.,* 471 N.W.2d 821, 824 (Iowa 1991). In *R.F.*, our supreme court recited this principle without any analysis citing *In re J.F.*, 386 N.W.2d 149, 152 (Iowa App. 1986). Our case of *J.F.* relied upon the analysis and this principle espoused in *In re Leehey*, 317 N.W.2d 513, 516 (Iowa Ct. App. 1982). We propounded that because our supreme court has:

> consistently taken the position it is highly desirable the status of children should be fixed as quickly as possible, be thereafter disturbed as little as possible, and then only for the most cogent reasons. In dissolution of marriage cases, a noncustodial parent seeking custody must establish by a preponderance of the evidence that the conditions since the court decree have so materially and substantially changed that the child's best interests make the change in custody expedient. This principle is premised on the concept that once custody is fixed it should be disturbed only for the most cogent reasons. Since a child's need for a stable and continuing environment is no less important in custody cases arising under the juvenile code, we believe that the requirement of a material and substantial change in circumstances is equally applicable to modification of custody and placement orders pursuant thereto.

(Internal citations omitted.) However, since *Leehey*, our juvenile code has evolved. Stability of the child's placement remains a concern but our code now includes a provision for permanency orders and hearings that did not exist at the time *Leehey* was decided. *See* Iowa Code § 232.104. To impose the additional requirement of showing a substantial change of circumstances, where our legislature has made provisions for permanency and created a two step process to modify a dispositional order to remove a child from a parent's care and transfer custody to DHS, is overly burdensome. However, because our supreme court has approved the principle, we defer to the supreme court whether case precedent should still be followed. *See State v. Miller*, 841 N.W.583, 584 n.1 (Iowa 2014). ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").

V.B. constitutes a material and substantial change of circumstances. Although the mother claimed she was limiting the stepfather's access to V.B., the juvenile court did not believe her testimony. Especially since the mother claimed the stepfather had not been allowed in the home since the day he slapped V.B. on the mouth and locked her out of the home, but later admitted he had been in the home at least two times. She also refused to use the tools available to her to protect V.B. from her stepfather. Furthermore, the mother's disregard of the directives set forth in the dispositional order and the effect it had on V.B. is a substantial change in circumstances that warrants modification of the prior court order. The STEPPS program was recommended by her psychiatrist and clearly intended to aid her parenting abilities or skills, yet the mother disregarded the order and never completed the program.

The mother next contends modification is not in the child best interests. In modification of a dispositional order relating to child custody, the focal point is the best interests of the child. *In re C.D.*, 509 N.W.2d 509.511 (Iowa Ct. App. 1993). The children's best interests are to be determined by looking at their long-range as well as immediate interests. *Id.* at 511–12. A parent's past performance provides insight into this determination. *Id.*

We conclude it is in the child's best interests to be removed from the mother's care. As the district court found, "[C]ontinuation of the child in the family home would be contrary to the welfare of the child because of the high degree of chaos in the home, lack of appropriate supervision, parenting deficiencies, and because the risk of physical and emotional abuse is unacceptably high." The risk for abuse is higher for V.B. than the other children because of the stepfather's

past history of assaulting her. Accordingly, we affirm the district court order modifying the dispositional order to transfer custody of the child to DHS for placement outside the home.

**AFFIRMED.**