# IN THE COURT OF APPEALS OF IOWA

No. 15-1245
Filed September 23, 2015

**IN THE INTEREST OF P.N.,**
    **Minor Child,**

**D.S., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum, District Associate Judge.


A father challenges the modification of a dispositional order in a child-in-need-of-assistance proceeding.  **AFFIRMED.**


Matthew Hatch of Hatch Law Firm, P.C., Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Michael J. Walton, County Attorney, and Julie Walton, Assistant County Attorney, for appellee.

Jean Capdevila, Davenport, for mother.

Steven Stickle of Stickle Law Firm, P.L.C., Davenport, attorney and guardian ad litem for minor child.


Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

The juvenile court adjudicated eleven-year-old P.N. as a child in need of assistance in February 2015 and placed him with his maternal grandmother while his mother completed residential treatment for substance abuse. At the request of P.N.'s guardian ad litem (GAL), on July 6, 2015, the juvenile court modified the case disposition to return P.N. to his mother's care. The court also issued a protective order against P.N.'s father, limiting their contact to visits supervised by the Department of Human Services (DHS).

The father appeals, contending (1) the court should have granted his motion to continue, (2) returning P.N. to his mother's care was not in the child's best interest, and (3) the protective order was not the least restrictive alternative. Because the father had reason to know the issue of visitation and P.N.'s safety would be considered at the hearing to modify disposition, we find no abuse of discretion in the court's denial of the father's continuance request. On the substantive issues of returning P.N. to his mother's care and restricting the father's interactions with him—after independently reviewing the evidence—we reach the same conclusions as the juvenile court and affirm its order.

## I.    Factual Background and Proceedings

This family came to DHS attention in November 2014 when P.N. called police because his mother, who was severely impaired from the consumption of vodka and anti-anxiety pills, was holding a butcher knife during an altercation with a man in their apartment. After this incident, the mother started substance

abuse and mental health services, and arranged for P.N. to stay with his maternal grandmother. P.N. returned to his mother's care two weeks later.

But in December 2014, when a family safety, risk, and permanency (FSRP) worker stopped by the home, the mother was again under the influence of alcohol and extremely distraught. According to the removal order, the mother's anxiety stemmed from her relationship with P.N.'s father. The mother, who was born in 1974, reported that the father, who was born in 1945, was her "crack dealer" and "pimp" when she became pregnant with P.N. The mother alleged the father had sexually abused P.N. when he was just one year old. She had sole legal custody of P.N. at the time of the removal and the father had only seen P.N. a few times during the past several years. The DHS placed P.N. with his maternal grandmother after the December removal.

The grandmother supervised weekend visitations between P.N. and his mother. By mid-February, the GAL reported that the mother had completed residential treatment at Country Oaks Center for Alcohol and Drug Services, was participating in after care, and taking classes for relapse prevention and co-occurring disorders. The mother was addressing her mental health needs by seeing a nurse practitioner for medication management. She also was attending a twelve-step program and lined up a sponsor.

Also in February, the DHS started one-hour supervised weekly visits between P.N. and his father. According to a March report from the GAL, during one of those visits, the father gave P.N. a wetsuit, which the GAL described as a "body-hugging garment that leaves little to the imagination in terms of body

shape." The father asked P.N. to wear the wetsuit for a subsequent visit so the father could photograph him in it. The GAL found the request "concerning" in light of a finding from the parents' 2006 custody order that the father had been living with a sex offender.

The juvenile court referred to that 2006 custody order in its March 11, 2015 dispositional order. Specifically, the 2006 order described the father as "deceptive and manipulative" and concluded he was "a predator who preys on needy and addicted women." The juvenile court considered the father's inappropriate wetsuit request and found it was not in P.N.'s best interest to have more frequent or longer visits with the father. The court also continued P.N.'s out-of-home placement with the maternal grandmother.

During the spring of 2015, the father engaged in what the GAL described as "stalking" of P.N. and his mother. The father was seen photographing them from a distance, and showed up at an event called "Celebrate Recovery" that the mother and P.N. had been attending for several months. P.N. became anxious and tried to hide to avoid contact with his father.

Also during this time period, the FSRP worker was concerned about the father's intentions in bringing unusual items to visitations and using them as the basis for conversations with P.N. laced with "sexual double entendre." The GAL reported the father "brought horns, trombones, and trumpets to the visits. Bringing these instruments has then led to [the father] having conversations with [P.N.] about blowing (where blowing and blow are words used extensively in the conversation). [The father] has also brought screws, nuts, and bolts to the visits

so that the conversation between [the father] and [P.N.] contains repetitive use of the words screw and screwing and nuts."

In a May 28, 2015 report to the court, the DHS recommended P.N. remain as a CINA, but be returned to his mother's care. The DHS report also recommended P.N.'s visitation with the father be suspended.

On June 11, 2015, the GAL filed a motion to modify disposition. The motion asserted the mother had "demonstrated sufficient progress toward the case plan goals to justify return of the child to her care and custody." The GAL also stated the child desired to live full-time with his mother. The juvenile court set the motion for hearing on June 19, 2015. The day before the hearing, the GAL filed a report recommending the court: (1) place P.N. in the care of his mother, subject to DHS supervision; (2) affirm the DHS decision to suspend visits between the father and P.N.; and (3) impose a protective order requiring the father not contact nor stalk nor photograph P.N.

The juvenile court issued a modification of the dispositional order and a protective order on July 6, 2015. The father now appeals.

## II.    Standard of Review

Our review is de novo. *In re K.B.*, 753 N.W.2d 14, 14 (Iowa 2008). We accord weight to the juvenile court's fact findings, especially when considering witness credibility, but we are not bound by these findings. *In re C.D.*, 509 N.W.2d 509, 511 (Iowa Ct. App. 1993). The modification of a dispositional order is provided for in Iowa Code section 232.103 (2015). Before the juvenile court may modify a dispositional order, the party seeking modification must prove a

substantial change in material circumstances, and that under the new conditions, a change is in the child's best interests. *In re D.G.*, 704 N.W.2d 454, 458 (Iowa Ct. App. 2005).

### III.     Discussion of Father's Claims

We begin with the father's contention the juvenile court should have rescheduled the June 19, 2015 modification hearing. The father's counsel asked for a continuance because he believed the hearing "was strictly to determine whether or not the child should be placed to live full-time with his mother." Counsel said he was not prepared to address the GAL's recommendation to limit the father's ongoing contact with P.N.

The GAL said he believed he would not be doing his job if he did not alert the court to "some additional issues going on in the background." The GAL mentioned the allegations that the father was stalking P.N. and the mother and was "not respectful of personal boundaries of [P.N.]" The mother's attorney objected to a continuance, stating: "We have the motion to modify disposition on the table, visitation's always an issue, so is the safety of the child." The State also resisted a continuance, noting the goal was for P.N.'s reunification with his mother to be successful and the father's actions were "thwarting those efforts." The juvenile court denied the father's motion to continue, citing the May DHS report recommending the suspension of visits.

Under Iowa Court Rule 8.5, part of the Iowa Rules of Juvenile Procedure, "A motion for continuance shall not be granted except for good cause." *See In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013). We review a juvenile court's

ruling on a motion to continue for an abuse of discretion. *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). We will "only reverse if injustice will result to the party desiring the continuance." *Id.*

We do not find the father suffered an injustice from the court's denial of his motion to continue the modification hearing. The father was on notice of the DHS recommendation to limit his contact with P.N. for more than a month before the hearing. The GAL's proposal to modify the case plan to return P.N. to his mother's care likewise opened up the question of the father's visitation. The GAL requested a protective order in a report filed the day before the hearing. The father's attorney was not specific regarding what additional preparation would have allowed him to better address the question of his client's supervised visitation. As it happened, the father took the opportunity to testify about his own behavior. Given these circumstances, the juvenile court did not abuse its discretion in denying the father's motion to continue.

We now turn to the father's argument that returning to the mother's care was not in P.N.'s best interests.[1] He contends P.N. remains at risk because of the mother's mental health issues and history of substance abuse.

As the party seeking the modification, the GAL had the burden to show the circumstances had materially and substantially changed since P.N.'s removal from his mother's care and that his best interest required a return to her custody.

---

[1] Generally in child welfare proceedings, one parent cannot assert facts or legal positions pertaining to the other parent. *See In re D.G.*, 704 N.W.2d at 460. In response to the petition on appeal, the State assumes error was preserved on this claim and makes no argument concerning the father's standing to raise it. We will make the same assumptions and proceed to the merits.

*See In re C.D.*, 509 N.W.2d at 511. The juvenile court found the GAL met his burden, summarizing the evidence as follows:

> The mother completed residential treatment at County Oaks on January 22nd, 2015. She remains fully engaged in substance abuse treatment and attends classes at CADS one day a week. Her counselor reports that she is doing very well, and the mother's UA's have been negative. The mother also attends weekly therapy and is taking prescribed medications. [P.N.] has been having weekly contact with his mother and has been spending weekends in her care. There have not been safety concerns during those visits.

After reviewing the record for ourselves, we agree with the juvenile court's assessment. The mother's circumstances substantially changed between December 2014 and July 2015. Based on the evidence presented at the modification hearing, returning to his mother's home was in P.N.'s best interest. *See In re D.S.*, 563 N.W.2d 12, 14 (Iowa Ct. App. 1997) (considering child's "long-range as well as immediate interests" and focusing on parental change as well as child's needs).

Finally, the father contends that issuing the protective order and limiting his contact with P.N. to supervised visits was not the least restrictive disposition considering the circumstances, as mandated by Iowa Code section 232.99(4). The State responds that assuming visitation issues fall within the ambit of section 232.99(4), the evidence demonstrated the necessity of limiting the father's contact with P.N. to supervised visits. We agree with the State.

The father has been diagnosed with narcissistic personality disorder. The DHS found him to be controlling and inappropriate during visits. He stalked the mother and P.N. outside of the visits. During his testimony, the father provided

an excuse for showing up at the Celebrate Recovery event, which the juvenile court did not find credible. The court also highlighted its ability to observe the father in the courtroom, and described his behaviors as "erratic" and noted he had "several rambling outbursts." We find the juvenile court's disposition to be entirely appropriate in light of the father's behavior.

**AFFIRMED.**