# IN THE COURT OF APPEALS OF IOWA

No. 18-0657
Filed July 5, 2018

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**J.M., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father appeals a child-in-need-of-assistance permanency order continuing his child's removal from his home. **AFFIRMED.**

David Barajas of Macro & Kozlowski, L.L.P., West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Brent M. Pattison of Drake Legal Clinic, Des Moines, guardian ad litem for minor child.

Considered by Potterfield, P.J., Tabor, J. and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

A father appeals a child-in-need-of-assistance permanency order continuing his child's removal from his home. Upon our review, we affirm the juvenile court's order.

## I. Background Facts and Proceedings

M.M., born in 2007, has a history of sexually abusing his younger brother.[1] This family again came to the attention of the department of human services (DHS) in February 2017, when M.M. ran away from the mother's home after she confronted him about reoffending. DHS entered a founded report for denial of critical care, failure to provide proper supervision, against the mother. The mother agreed to M.M. residing with the father while he received services. DHS entered a safety plan disallowing M.M. from having unsupervised contact with any other children.

In April 2017, the court entered an order formally removing M.M. from the mother's custody and placing him with the father. An adjudication order was entered in June 2017 adjudicating M.M. a child in need of assistance (CINA).[2] A July dispositional order continued M.M.'s placement with the father.

The mother moved to Arizona with M.M.'s younger half-siblings in August.[3] A September Family Safety, Risk, and Permanency Services progress report stated:

---

[1] This family previously received services from the department to address M.M.'s alleged sexual abuse of his younger half-sibling. That case was closed in October 2016.

[2] M.M.'s two younger half-siblings were also adjudicated CINA. They remained with the mother.

[3] DHS closed those children's cases in October.

> [The father] continues to keep [M.M.] safe. [The father] gets [M.M.] to school on time, takes him to therapy weekly and also takes him to football every day after school. [The father] has been looking for a job during this reporting period. He reports he does not have any issues with [M.M.] at home and he is doing well at school.

An October letter from M.M.'s therapy provider indicated the child "has been very engaged in therapy" and "has progressed well." An October review order continued M.M.'s placement with the father.

Things began to go downhill in the father's home after that point. An October DHS report indicated concerns about M.M.'s tardiness to school. When asked, the father explained M.M. was staying at an uncle's house during the school week so he could go to football practice, which made him late for school. The father's estranged wife reported a physical altercation with the father in M.M.'s presence. In response to questions about marijuana use, the father admitted he would test positive for marijuana.

In November, the mother filed a motion to modify the dispositional order and for an emergency hearing, reporting the father had been evicted from his apartment and was living with his girlfriend and her children in Indianola. The mother attached pictures of the father's apartment, showing drug paraphernalia and unsanitary living conditions.

Following an emergency hearing, the court ordered the father to "submit to an immediate drug screen." When the father failed to do so, the State filed a motion to modify the CINA review order to remove M.M. from the father's care and place M.M. in DHS custody, alleging in part:

> That on or about November 9, 2017, the Court held an emergency hearing to address the mother's motion to modify placement. The father failed to appear for the hearing and the Court ordered that a

drug screen be submitted by the father. It is reported that the father appeared at the drug testing facility late Thursday afternoon and refused to provide a hair stat. There have been ongoing concerns regarding the father's substance abuse, housing, domestic violence and overall stability.

The court granted the State's motion and modified the CINA review order "to provide that the child be placed in the custody of DHS for shelter placement and/or relative placement, under DHS supervision." M.M. was placed in shelter care; first in Agency, Iowa, and then in the YESS shelter in Des Moines.

A CINA review order entered in December continued placement of M.M. outside the parents' homes. The mother requested M.M. be placed with her in Arizona, and the court granted her request for a home study under the Interstate Compact on the Placement of Children (ICPC). A report from the YESS shelter indicated M.M. expressed feeling "abandoned" and "there appears to be a steady decline in his behaviors and overall mental health." The father visited M.M. at the shelter sporadically in December and January. The father attended a substance-abuse evaluation in February 2018; his urinalysis was negative and no treatment was recommended. The father and his girlfriend both completed drug screens in March that were negative. However, the father lived with his girlfriend, who DHS reported "has an open DHS case in relation to methamphetamine use."

A CINA review order entered in February continued placement of M.M. outside the parents' homes. DHS reported M.M. began having overnight visits with one of his teachers "to explore possible placement." DHS opined, "There are concerns with both parents and their ability to understand the safety concerns and the level of supervision that is needed for [M.M.] to ensure the safety of himself

and other children." Still, DHS's plan was for M.M. "to be returned to [the father] or [the mother], should that be appropriate."

In April 2018, following a hearing, the court entered a permanency order, setting forth a permanency goal of "reunification with [M.M.] with his mother and siblings in Arizona," and continuing permanency for an additional six months. The court authorized the child's guardian ad litem to travel to Arizona to visit the mother's home prior to the next hearing and directed Arizona authorities to complete another ICPC study[4] "about the possibility of placing [M.M.] in her home." The court noted concerns about substance abuse and domestic violence in the father's home and denied placement with the father. But the court emphasized the child "needs to be out of shelter care as soon as possible" and directed DHS to find a suitable placement for M.M. that would be "supportive of the long term goal, and that is [his] placement with his mother and siblings in Arizona."

The next week, the State filed a motion to modify, stating in part:

[T]he child has been in shelter at YESS since November 2017. Placement in the parents' home is not an option at this time; however the long term goal is for the child to be reunified with his siblings and mother in Arizona. The child has competed [sex-offender] therapy and has ongoing therapy at YESS. The Court previously ruled that it could not place the child with the father at this time as concerns were raised on the father's ability to support the long term goal of reunification with the mother. The child has been having extended visits with his teacher, . . . including overnights. The Court expressed the child need[s] to be transitioned from shelter as efforts continue to return him to his mother's custody.

---

[4] Caseworkers received notice that Arizona had denied the mother's first ICPC study in January due to an open DHS case in Arizona; the mother had recently given birth, and the baby tested positive for marijuana. The mother denied current marijuana use and told investigators she accidentally put "edible" marijuana on her sandwich by using honey her boyfriend's sister made with marijuana.

The State asked the court to modify the permanency order to place the child with the teacher. The State's motion also alleged, "[T]he State has been advised by DHS that the all parties are in agreement with the motion."

The court granted the State's motion and modified the permanency order "to provide that effective April 13, 2018, the child in interest be placed in the temporary custody of [his teacher and her husband], under DHS supervision as another suitable person."

The father appeals.[5]

## II.     Standard of Review

We review orders arising out of CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We are not bound by the juvenile court's fact findings; however, we do give them weight. *Id.* "In a proceeding of this nature the focal point is the best interests of the children. The children's best interests are to be determined by looking at the children's long-range as well as immediate interests." *In re C.D.*, 509 N.W.2d 509, 511–12 (Iowa Ct. App. 1993).

---

[5] The father also filed a resistance to the State's motion to modify, stating that contrary to the State's assertion that all parties were in agreement with the child being placed with his teacher, "[t]he father was not consulted on the change of placement, is not in agreement with the change of placement, and requests that the State's motion be set for hearing." The court denied the father's resistance without a hearing, stating:

> A [permanency] hearing in open court was held.
> The undersigned expressly chose not to place child with [the] father.
> The father indicated in open court with father present that the child could be moved to a less restrictive placement with a suitable person (his teacher) once that placement was fully vetted. This child has been in shelter a long time. The permanency goal is reunification with child's mother out of state. The court concluded that placement with the father would be contrary to the child's best interest and would work against the permanency goal. The "resistance" filed by the father has been fully accorded an opportunity to be heard. The modification order filed by the court merely set in place that which was contemplated in open court at the last hearing.

### III. *Discussion*

The father challenges the juvenile court's order continuing the child's removal from his care, claiming he is engaged in services, participating in visits, and has "a strong desire to be a father to M.M. and have him reside with him in his care." According to the father, "Continued placement of M.M. in shelter care or with another suitable person is unacceptable when a parent has demonstrated their willingness and ability to appropriately care for their child in their home."

At the outset, we observe the father's request that we reverse "[t]he order continuing placement of M.M. in shelter care." The father misinterprets the juvenile court's order. The juvenile court was familiar with this family and carefully weighed the options of the child's placement in shelter, with the father, or with another suitable person (including the father's aunt). From the transcript of the permanency hearing, we glean the court's primary concerns—to get M.M. out of shelter care and to reunify M.M. with his mother and siblings in Arizona. The court had the difficult task of determining which placement would be best to achieve both the short-term goal of getting M.M. out of shelter *and* the long-term goal of M.M.'s reunification with the mother in Arizona. The court commended the father's progress and commitment to the child but ultimately determined that placement with the father would "work against the permanency goal" of returning the child to mother's care in Arizona. The court reiterated this in its written order:

> The Court emphasizes that [M.M.] needs to be out of shelter as soon as possible. The Court believes that first and foremost, a safe stable placement for [M.M.] is needed. That could be suitable person (teacher, counselor) properly vetted by DHS. That could be a family foster home, appropriate for a child with [M.M.]'s unique design. The placement needs to be supportive of the long term goal,

and that is [M.M.]'s placement with his mother and siblings in Arizona.

The Court encourages appropriate contact and visits for [M.M.]'s benefit with his father. But the Court does not believe on this record that placement at this time provides the requisite degree of stability, and more importantly, the Court does not believe it will be supportive of the long term goal and the timing (hoped for) in achieving that goal.

"It is true that 'chapter 232 favors relative placements over nonrelative placements,' but its ultimate goal 'is to "best serve the child's welfare."'" *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa Ct. App. Dec. 21, 2016) (quoting *In re N.M.*, 528 N.W.2d 94, 97 (Iowa 1995). "The most important consideration in any CINA case is the best interests of the child." *In re D.D.*, 653 N.W.2d 359, 362 (Iowa 2002). Here, the juvenile court found the child's best interests were served by placement with another suitable person, rather than the father, for a number of reasons. Under these circumstances, we find no reason to disturb the court's thoughtful and well-reasoned decision. We therefore affirm the juvenile court's order placing the child in the care of another suitable person.

**AFFIRMED.**