# IN THE COURT OF APPEALS OF IOWA

No. 18-1023
Filed September 12, 2018

**IN THE INTEREST OF P.J., C.J., T.J., and G.J.,**
**Minor Children,**

**M.J., Father,**
        Appellant.

_____


Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.


A father appeals the child-in-need-of-assistance adjudication order temporarily removing his children from his care and the dispositional order continuing their removal. **AFFIRMED.**


Jason S. Rieper of Rieper Law, PC, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Lynn M. Vogan of Youth Law Center, Des Moines, guardian ad litem for minor children.


Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A father appeals the child-in-need-of-assistance adjudication order temporarily removing his children from his care and the dispositional order continuing the children's out-of-home placement. He argues removal was not necessary as there was no imminent risk to the children's life and health and continued removal is contrary to the children's welfare.

**I.     Background Facts and Proceedings**

The mother and father are married and have four children: P.K. (born 2009), C.K. (born 2012), T.K. (born 2015), and G.K. (born 2017). The children came to the attention of the department of human services (DHS) in January 2018 upon allegations the father assaulted the mother in the presence of the children and the mother abused prescription medication while she cared for the children.

In December 2017, prior to DHS involvement, the father raped the mother in their bed. Two of the children were asleep in the same room. The mother had to bite into a pillow to keep from crying out in pain and waking the children. Later that month, the father physically assaulted the mother at least once. In early January 2018, the mother moved out of the family home and left the children in the father's care. Upon successive applications by the father and paternal grandfather, the court ordered involuntary hospitalization of the mother, first for mental impairment and then for substance abuse. It was during hospitalization that the mother first reported the rape and physical assault to police. While she remained hospitalized, the DHS investigation began.

The mother was released from the hospital on February 1, upon which she began an intensive outpatient treatment for substance abuse.[1] On February 5, the mother filed a petition for relief from domestic abuse seeking a protective order against the father based upon the rape, physical assaults, and her fear of the father. The mother and father agreed to the protective order on February 14, which granted temporary custody to the father and supervised visitation to the mother. On February 16, DHS concluded its child-abuse investigation and issued founded child-abuse reports against both parents—denial of critical care for failure to provide proper supervision against the father and the use of dangerous substances against the mother.

On March 1, the State petitioned for child-in-need-of-assistance (CINA) adjudications for all of the children based on the founded child-abuse reports. During the March 23 adjudication hearing, all parties consented to the CINA adjudication, and both the State and guardian ad litem (GAL) recommended the children remain in the physical custody of both parents. The father challenged the custody recommendation and requested primary custody. During the contested hearing, the State submitted the founded child-abuse assessments against both parents, the police report filed by the mother regarding the sexual and domestic assaults, and the protection order between the parents. The mother testified to the December rape and other physical altercations between her and the father. After she text messaged the father about the sexual assault, he responded "I'm sorry babe it won't happen again." She further testified to an incident in which the

---

[1] The mother was discharged from outpatient treatment in mid-March after successfully completing the program.

father followed her in his truck and tried to run her off the road when the children were in his vehicle. The mother also testified the paternal grandmother uses marijuana frequently, stating that "when you go over to the house, all you smell is pot." She testified the children have been cared for at the paternal grandparents' house. She was also concerned the oldest child often acted as the parent for the younger children, including giving them baths and getting up in the middle of the night to take care of them. The father did not testify or present any evidence.

At the conclusion of the hearing, the court entered its ruling on the record, and subsequently in a written ruling, adjudicated all four children as CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2018). The court ordered temporary removal of the children from the parents' custody and placed them in the custody of DHS. In its written ruling, the court found the father raped the mother in December. The court also found the father physically assaulted the mother at least twice and during one of the assaults the children were awake and one child begged him to stop. Further, the court found the mother is addicted to prescription medication and only recently completed treatment. Based upon those findings, the court held that remaining in the parental home would be contrary to the children's welfare and substantial evidence existed to believe removal was necessary to avoid imminent risk to the children's health or lives.[2] After their removal, the children were placed with two separate relatives.

The court held a contested dispositional hearing in May. At the hearing, the State and GAL both recommended the children remain in their current placements

---

[2] The father appealed the adjudication order, which the supreme court denied on May 3.

while the father advocated for the children's return to his custody. The father testified he believed behaviors the children were showing were the result of being removed from his care. He also testified he had requested therapy to assist him in handling all that had happened and that it was not a request that originated with DHS. The father claimed that, at the adjudication hearing, he did not dispute the rape allegation or the contention that the oldest child was caring for the younger children only because he was not called as a witness.

The father admitted to allowing his sister, who was recently released from jail on a drug charge and has an extensive drug history, and his mother, who also has drug issues,[3] to attend one of his recent supervised visits with the children. He failed to notify both DHS and the person providing supervision of their presence during the visit. He also admitted to allowing his mother to care for his children in December and to confronting her about her drug use many times, both in the past and present.

In its ruling, the court rejected the father's arguments and found his testimony "manipulative and not credible. He repeatedly insisted on blaming others despite direct evidence to the contrary." The court ordered the children to remain out of the home due to the "father's unaddressed violence," his failure "to provide minimally adequate care for the children, before removal," and the mother's "need for increased stability and ongoing services for trauma." It ordered the children be evaluated for therapy and ordered assistance for the mother in her counseling needs. It also ordered the father to complete a psychosexual

---

[3] The paternal grandmother tested positive for marijuana after the adjudication hearing.

evaluation, complete all recommended treatment, complete the Iowa Domestic Assault Program, and participate in therapy to address how his violence impacted the children and how to parent safely and appropriately. The father appeals.

## II. Standard of Review

CINA proceedings are reviewed de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "We give weight to the fact findings of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by these findings." *In re C.D.*, 509 N.W.2d 509, 511 (Iowa Ct. App. 1993). "Our primary concern is the children's best interests." *J.S.*, 846 N.W.2d at 40. "The children's best interests are to be determined by looking at the children's long-range as well as immediate interests." *C.D.*, 509 N.W.2d at 511–12. "The parent's past performance provides insight into this determination." *Id.*

## III. Analysis

On appeal, the father challenges the part of the juvenile court's adjudication order that removed the children from his custody and the dispositional order continuing the removal. He does not challenge the CINA adjudication. He contends continued placement outside his home is contrary to the children's welfare as behavioral issues have surfaced only since their removal.

### A. Removal Order

First, we need not determine the validity of the removal order as the issue is moot. After adjudicating the children as CINA during the March adjudication hearing, the court temporarily removed the children from the parents' custody and placed them with DHS for purposes of foster or shelter care. The children were subsequently placed into two relative homes under the supervision of DHS. The

court ordered a dispositional hearing and, at that hearing, custody was confirmed with the two relative placements under the supervision of DHS. "Any error committed in granting the temporary [removal] order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order." *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994).

B.     Dispositional Order

"When the dispositional hearing is concluded the court shall make the least restrictive disposition appropriate considering all the circumstances of the case." Iowa Code § 232.99(4). Section 232.102(6)(b) provides:

> [T]he court must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and shall identify the reasonable efforts that have been made. The court's determination regarding continuation of the child in the child's home, and regarding reasonable efforts, including those made to prevent removal and those made to finalize any permanency plan in effect, as well as any determination by the court that reasonable efforts are not required, must be made on a case-by-case basis.

The children's safety is the "paramount consideration." *Id.*

Here the court continued removal of the children due to the father's unaddressed issues with violence and his failure to provide minimally adequate care for the children before their removal. After a review of the record, we agree with the district court that reasonable efforts were made to return the children to their parents but serious concerns still exist. We conclude the children could not be safely parented by the father at the time of the dispositional hearing. First, the father must address his issues with violence. Though the father argues the mother's claims of domestic and sexual abuse are unsubstantiated, he had the opportunity to deny the allegations at the adjudication hearing but did not do so.

He did not testify or offer any contradictory evidence to refute the allegations. Further, the allegations were the basis for the DHS investigation and the founded child-abuse assessments against the father.

While the father is open to therapy for himself and the children, his argument on appeal focuses on the fact that he volunteered to attend therapy and offered the name of a therapist to DHS. He contends DHS's recommendation for therapy only occurred after he suggested it. However, this is not the important issue. The record reflects that in April, during supervised visits and a family team meeting, the father spoke of a specific therapist who could provide services. He stated he was still waiting to set up an appointment. As of the dispositional hearing in mid-May, the father had yet to engage in any therapeutic services and no appointment was set. Instead, the father had waited to hear from the therapist for nearly a month at the time of the hearing and took no further steps. There is no evidence in the record that the father sought assistance elsewhere, despite conceding that other therapists are available and the specific therapist mentioned was not the only individual who could help him.

There are also concerns about the father's extended family and their contact with the children. The father admitted he has concerns about his mother's drug use and recently confronted her about it in addition to confronting her multiple times in the past. However, despite his concerns, before their removal, the father left the children with his parents while he travelled for work. His mother tested positive for marijuana after the adjudication hearing, yet during the father's supervised visits with the children, he allowed her to attend. The father also included his sister in a visit without disclosing this to either DHS or the parties

providing supervision. The sister was recently released from jail on drug charges and has an extensive history of substance abuse. DHS confirmed it would not approve of the father's sister visiting the children.

Additionally, there are concerns regarding the father's care of the children before their removal. The youngest child had a bout with E. coli earlier in the year, which the father failed to mention during DHS's investigation. His care of the child was also an issue, as he failed to timely give the child his medication or follow aftercare instructions for several weeks. The aftercare was completed after the children's removal. Finally, the evidence showed that the oldest child, who is eight years old, acted in a parental role to the younger children when the children were in the father's primary care.

The district court's task was to determine which placement would be best to achieve the permanency goal of reunification. Both parents have serious issues they need to address. The dispositional order requires the father to obtain a psychosexual evaluation and successfully complete all recommended treatment, successfully complete the Iowa Domestic Abuse Program, and participate in therapy to address his violent tendencies. The order provides the father the opportunity to demonstrate he is able to provide appropriate care for the children. Under these circumstances, we find clear and convincing evidence the continuation of temporary custody of the children in their current placements under the supervision of DHS is the least restrictive disposition and is in the best interests of the children. We therefore affirm the court's adjudicatory and dispositional orders.

**AFFIRMED.**