# IN THE COURT OF APPEALS OF IOWA

No. 25-0161
Filed April 9, 2025

IN THE INTEREST OF K.Q.,
Minor Child,

K.Q., Mother,
     Appellant.
_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Jean Capdevila, Davenport, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to her child, K.Q., born in 2023.[1]  Upon our review, we affirm.

### I.      Background Facts and Proceedings.

The Iowa Department of Health and Human Services ("the department") became involved with this family at birth after K.Q. and the mother tested positive for amphetamine, methamphetamine, cocaine, and benzoylecgonine.  As a result, K.Q. experienced "significant" withdrawal symptoms while in the hospital.  The mother did not take the hospital's concerns about K.Q. seriously, "mak[ing] sarcastic jokes about cocaine not being a drug you can experience withdrawal symptoms from."  The juvenile court removed K.Q. from the mother's custody and placed her with the father.  But when the child tested positive a second time after being exposed to and even ingesting illegal substances, she was removed again and placed with her maternal uncle.

While the mother tried to address the department's concerns about her substance use, she struggled to remain sober.  Despite numerous positive drug tests, including while pregnant, the mother consistently denied any drug use.[2]  When the department tried to engage with the mother regarding her substance

---

[1] The father's parental rights to K.Q. were also terminated.  But because he does not appeal, we do not address him further except to note his role as the child's placement.

[2] The mother admitted she used Suboxone as prescribed through a medication-assisted treatment program, which she claimed created a "false positive" for illegal substances.  The mother also had an Iowa medical cannabidiol registration card, which permitted her to consume cannabidiol products for medical use.  *See* Iowa Code § 124E.4 (2024).  Because both were prescribed, the department was focused on her illegal drug use.

use, she became "combative and argumentative," using extremely offensive language and denying she would ever use methamphetamine. And even when she finally admitted to using daily and agreed to treatment, she could not meet expectations. Throughout the proceedings, the mother attempted three separate inpatient programs; each time, she voluntarily left or was unsuccessfully discharged. These inpatient stays ranged from only seven days to over a month at the longest. When the mother was not residing in treatment, she was often incarcerated. As of the termination hearing, the mother still had pending child-endangerment charges for exposing K.Q. to methamphetamine. This impacted her ability to engage in services, such as visitation, because "she was moving in and out of programs [and jail] so quickly [the department] could not always keep up." When the mother did maintain contact with K.Q., the department described the two as having "a strong bond." But the mother never progressed to unsupervised visits because she could not maintain her sobriety despite exhausting multiple inpatient and extensive outpatient options.

In January 2025, a termination hearing occurred, in which the department caseworker testified that K.Q. was thriving in her placement. Despite having some developmental delays, the caseworker confirmed that K.Q.'s uncle is a preadoptive option and able to meet the child's specific medical and emotional needs. While the mother requested that the court delay permanency and place K.Q. in a guardianship, the juvenile court disagreed. Instead, it terminated the mother's parental rights to K.Q. so she could be adopted. The mother appeals.

## II.    Review.

We review termination-of-parental-rights proceedings de novo.  *See In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).  "We are not bound by the factual findings of the juvenile court, but we give them weight, particularly regarding credibility determinations."  *Id.*

## III.    Discussion.

Because the mother does not challenge the grounds for termination, we "limit our review to the specific claims presented."  *See In re K.W.*, No. 23-1884, 2024 WL 1757377, at *2 (Iowa Ct. App. Apr. 24, 2024).  The mother only challenges the juvenile court's finding that a guardianship is not in the child's best interests and asks us to apply a permissive exception to termination.  We consider each argument in turn.

### A.  Guardianship.

The mother first contends that it is in K.Q.'s best interests to defer permanency and place her in a guardianship with the child's maternal uncle.  *See* Iowa Code § 232.104(2)(d)(2) (permitting the court to "[t]ransfer guardianship and custody of the child" in lieu of terminating parental rights).  To determine whether guardianship is in a child's best interests, we consider "the child's age, the length of the removal, the viability of other permanency options, and the relationship between the parent and guardian."  *In re G.S.*, No. 23-0902, 2023 WL 5092545, at *2 (Iowa Ct. App. Aug. 9, 2023).  The juvenile court found that a guardianship would not provide K.Q. with the permanency she needs.  Instead, adoption would protect her from further drug exposure by allowing her adoptive parents to regulate

contact with her biological parents. It also would give K.Q. access to subsidized medical care, which it found is "likely" necessary given her developmental delays.

Lastly, the court found that the mother had not adequately addressed any of the department's central concerns, particularly her substance use. At one point, the juvenile court described the mother's progress as "non-existent despite her many attempts and cooperation with services." When terminating her rights, the court concluded that the mother "wants to quit using drugs, but "her prognosis is poor."

Upon our own review of the record, we agree with the juvenile court. We find that termination, not guardianship, is in K.Q.'s best interests because it affords her the permanency she deserves. *See In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) ("It is well-settled law that we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (cleaned up)). "A guardianship does not provide the same level of stability and safety for a child as termination of parental rights and adoption because a guardianship is not permanent." *In re V.W.*, No. 24-0983, 2024 WL 4394433, at *3 (Iowa Ct. App. Oct. 2, 2024). At the time of termination, K.Q. was not even two years old, so a guardianship could last sixteen years. *See A.S.*, 906 N.W.2d at 478 (considering the child's tender age when declining to establish a guardianship). Further, because the mother has not established herself as a safe parent or maintained her sobriety, we are not convinced that delaying permanency is for K.Q.'s benefit. *G.S.*, 2023 WL 5092545, at *3 (considering the parent's "lack of any substantial progress" in declining a guardianship). We therefore place the child's "permanency and stability needs"

over that of the mother's and affirm termination of parental rights. *In re C.D.*, 509 N.W.2d 509, 513 (Iowa Ct. App. 1993).

### B. Permissive Exception to Termination.

Finally, the mother requests us to grant an exception to termination based on her parent-child bond. *See* Iowa Code § 232.116(3)(c) (permitting the court to decline to terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The State argues in response that the mother failed to preserve error on this issue because her counsel never argued that an exception was warranted. *See In re J.R.*, No. 24-0942, 2025 WL 52738, at *2 (Iowa Ct. App. Jan. 9, 2025) (applying error-preservation principles to waive a parent's permissive-exception argument). After a thorough review of the record, we agree.

But even if the mother had preserved error, it was her burden to establish "that, on balance, [their] bond makes termination more detrimental than not." *In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021). While the record supports the mother and the child did share a close bond, the mother makes no more than a passing argument that K.Q. would "be disadvantaged by termination." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). In fact, as we have previously discussed, termination is in K.Q.'s best interests. This finding cannot be overcome when we consider the child's need for permanency and the mother's current inability to meet K.Q.'s needs. *See id.* Accordingly, even if error was preserved, we would still decline to apply a permissive exception.

***IV.*** **Disposition.**

Because we find that a guardianship is not in K.Q.'s best interests and the mother's permissive-exception argument is waived, we affirm termination of her parental rights.

**AFFIRMED.**